UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
BARBARA SMITH,                                          :  CIVIL ACTION NO.
                                                        :  3:02CV473 (AVC)
                                                        :
                    Plaintiff                           :  MEMORANDUM IN SUPPORT
                                                        :  OF APPROVAL OF CLASS
                                                        :  SETTLEMENT
                                                        :
                                                        :
JOSEPH M. TOBIN and                                     :
TOBIN & MELIEN                                          :
                                                        :
                    Defendants.                         :
                                                        :
                                                        :  October 20, 2004
---------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF APPROVAL OF CLASS SETTLEMENT

## AND IN SUPPORT OF AWARD OF AGREED-UPON FEES

This consumer class action was filed by Plaintiff, Barbara Smith, in March 2002. Plaintiff claimed that state court complaints filed by Tobin and Melien violated certain provisions of Connecticut law and therefore violated the federal Fair Debt Collection Practices Act. Smith sought monetary damages, costs and attorney's fees. The parties request the Court to approve the Settlement Agreement based on a determination that the Settlement is fair, reasonable, and adequate to the Class Members.

The parties settled with the assistance of conferences conducted by PJO Reed Murphy. If the Settlement Agreement receives final approval from the Court, the Defendants will pay an aggregate amount of $13,000 to the participating Members of the Class, but not more than $325.00 to any individual Class Member, and will pay $1,000 statutory damages to the class representative plus a fee of $500.00 to the Plaintiff for acting as a class representative. The Defendants will also pay a reasonable attorney's fee of $8,500 to the Plaintiff's attorney. In

return for these payments, Plaintiff and Class Members agreed to dismiss this lawsuit with prejudice, and release their claims against the defendants.

Class certification requirements are satisfied, and the settlement is fair and reasonable.

## I.  THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

Under Federal Rule of Civil Procedure 23, a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). For the reasons discussed below, the requirements of Rule 23 are satisfied in this case.

### A.  Rule 23(a)(1) – Numerosity

The first requirement of Rule 23(a) is that the class members are so numerous that ordinary joinder of all members is not practicable. Impracticability exists where individual adjudication would take an extended period of time and joinder of all the parties would be expensive, time consuming and drastically increase the legal expenses for all parties.[1] Generally, "numerosity is presumed at a level of 40 members."[2] Here, 113 class members were identified and defendant sent the Notice of Pendency approved by the Court to those members. Since 46 of the mailings were returned and could not be forwarded, 67 members will share in the class recovery. Consequently, the numerosity requirement is met.

---

[1]   *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1990).

[2]   *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

**B.     Rule 23(a)(2) – Commonality**

Rule 23(a)(2) requires that common questions of law or fact be at the core of the cause of action alleged by the plaintiff. Courts have typically found a common nucleus of operative facts where, as in the present action, the defendant engaged in standardized conduct toward putative class members. Comer v. Cisneros, 37 F.3d 775, 797 (2d Cir. 1994); Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997); Garfinkel v. Memoray Metals, Inc., 695 F. Supp. 1397, 1402 (D. Conn. 1988). Here, the illegality of the collection complaint served on all of the settlement class members is at the core of plaintiff's complaint. Thus, the commonality requirement is met.

**C.     Rule 23(a)(2) – Typicality**

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[3] Minor variations among individual plaintiffs' fact patterns do not undermine the typicality requirement.[4] The typicality requirement is met here because each of the potential class members received virtually identical state court complaints and their claims arise from the same practices of Defendants that gave rise to plaintiff's claims.

---

[3]     *In re Drexel Burnham Lambert*, 960 F.2d at 291.

[4]     *See Robidoux v. Celani*, 987 F.2d 931, 936-937 (2d Cir. 1993).

3

**D.    Rule 23(a)(4) – Adequacy of Representation**

The requirement of Rule 23(a)(4) is met if it appears that (1) Plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation and (2) Plaintiff's interests are not antagonistic to those of the class they seek to represent. See, e.g., Marisol A., 126 F.3d at 378; In re Joint Eastern and Southern Dist. Asbestos Litig., 78 F.3d 764, 778 (2d Cir. 1996).

The adequacy of representation prong tends to merge with the typicality and commonality previously discussed. Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625 n.20 (1997). The existence of the elements of adequate representation are presumed and the burden is on the defendant to demonstrate that the representation will be inadequate. As the court explained in Cook v. Rockwell Int'l Corp., 151 F.R.D. 378, 386 (D. Colo. 1993):

> [A]dequate representation presumptions are usually invoked in the absence of contrary evidence by the party opposing the class. On the issue of no conflict with the class, one of the tests for adequate representation, the presumption fairly arises because of the difficulty of proving negative facts. On the issue of professional competence of counsel for the class representative, the presumption fairly arises that all members of the bar in good standing are competent. Finally, on the issue of intent to prosecute the action vigorously, the favorable presumption arises because the test involves future conduct of persons, which cannot fairly be prejudged adversely.

Id. (quoting 2 Newberg, Class Actions § 7.24 at pp. 7-81, 7-82).

Both prongs of the "adequacy" test are met here. First, Plaintiff has retained counsel experienced in class action litigation to prosecute her claims and those of the Class. Second, there is nothing to suggest that the representative Plaintiff has any interest antagonistic to the

4

vigorous pursuit of the Class claims against Defendants.[5] Plaintiff shares with the Class the interest in establishing that the defendants' practices in asserting nonexistent causes of action violate the FDCPA. Accordingly, the representative Plaintiff adequately represents the interests of the Class.

### E.     Rule 23(b)(3) – Predominance/Superiority

In addition to satisfying the requirements of Rule 23(a), a potential class action must qualify under one of the categories set fourth in Rule 23(b). Rule 23(b)(3) allows class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Here, both prongs of the (b)(3) category of Rule 23(b) are satisfied.

#### 1.     Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting on individual members. Common issues predominate over individual issues where plaintiffs have alleged a common course of conduct on the part of a defendant. In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 314-315 (3d Cir. 1998). Cases dealing with the legality of standardized documents or conduct

---

[5]     *In re Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'"), *quoting Guarantee Ins. Agency Co. v. Mid Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D.Ill. 1972). Furthermore, such conflict must be real and not speculative. *Robertson v. National Basketball Association*, 389 F.Supp. 867, 899 (S.D.N.Y. 1975).

are generally appropriate for certification and resolution as a class because the document is the crux of the case and results in the predomination of common questions of law or fact.[6] Consequently, the first prong of Rule 23(b)(3) is satisfied in this case.

### 2. A Class Action is Superior to Other Available Methods to Resolve this Controversy

In addition to finding the predominance of common questions, Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." A class action is widely recognized as superior to other available methods -- particularly individual lawsuits -- for the fair and efficient adjudication of a suit that affects a large number of persons injured by violations of consumer protection laws or common law. Prudential, 148 F.3d at 316; See Lake v. First Nationwide Bank, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (public interest in vindicating rights of consumers favors disposition of claims in a class action). Defendant has violated the rights of such a large number of Connecticut residents to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this peculiarly Connecticut matter. Macarz v. Transworld Systems, Inc., 193 F.R.D. 46, 55 (D. Conn. 2000), relying on Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997).

---

[6] Mailloux, 204 F.R.D. at 42; Harrison, 1997 WL 469996, at *9; D'Alauro, 168 F.R.D. at 458.

Moreover, as the FDCPA's statutory scheme makes apparent, Congress specifically envisioned the class action as a principal enforcement mechanism for the FDCPA.[7]

## II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

**Relevant Factors.** Pursuant to the factors set forth in Foe v. Cuomo, 700 F. Supp. 107, 109-13(1988), aff'd, 892 F. 2d 196 (2d Cir. 1989), the Court must determine whether the proposed settlement is fair, reasonable, and adequate. "Keeping in mind that the law favors settlement (citation omitted) especially in class actions," in making its determination, the Court should consider the following factors: (1) the likelihood of Plaintiff's success on the merits; (2) the extent of support from the parties; (3) the judgment of counsel; (4) the presence of good faith bargaining; and (5) the complexity and nature of the issues of law and fact. 700 F. Supp. at 110.

In applying these factors, the Court need not substitute its judgment for that of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action. Where, as here, the settlement was negotiated at arm's-length, the settlement enjoys a presumption that it is fair, reasonable and in the best interest of the class.[8] The Court should reach an "intelligent and objective opinion of the probabilities of ultimate success" compared to the benefits obtained through compromise.[9] Thus, in reviewing a proposed settlement of a

---

[7] See 15 U.S.C. § 1692k(a) and (b).

[8] See, e.g., States of N.Y. and Md. v. Nintendo of Am., Inc., 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991).

[9] Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972); Shielcrawt v. Moffett, 59 N.Y.S.2d 619, 621 (Sup. Ct. N.Y. County 1945).

7

class action, the Court should not compare its terms with a hypothetical or speculative measure of recovery that might be achieved after prosecution of an action to a successful conclusion.[10]

### A. The Class Recovery is Fair

Under the FDCPA, a class recovery is limited to the lesser of $500,000 or 1% of the defendant's net worth. The class recovery, $13,000, would be the maximum recovery if defendants have a net worth of $1,300,000. Likewise, the per person recovery of up to $325 compares favorably with the $1,000 maximum statutory damages which each member could seek in an individual action with its concomitant burden on the judicial system and the right to recover their costs and counsel fees. Defendants have borne the burden of class notice; the cost thereof was not deducted from the amount devoted to the class. The award to plaintiff and counsel was also not deducted from the amount devoted to the class. Defendants have agreed to pay the class representative and counsel in addition to the amount devoted to the class.

Since 67 class members will participate, each will recover approximately $194.00. This is well within the range of reasonableness in light of the best possible recovery.[11] An

---

[10]     *Milstein v. Werner*, 57 F.R.D. 515, 524 (S.D.N.Y. 1972).

[11]     *See, e.g., Bonnett v. Education Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003) (granting final approval to an award of $77.46 to each of 284 class members who returned claim forms); *Cope v. Duggins*, 203 F.Supp.2d 650 (E.D. La. 2002) (672 class members out of 4,925 returned claim forms and received $11.90 each); *Henderson v. Eaton*, No. Civ.A.01-0138, 2002 WL 3145728 (E.D. La. October 25, 2002) (granting final approval to an award of $3,000 to 142 class members to be divided on a *pro rata* basis, or about $21.00 for each class member); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F.Supp.2d 436 (E.D. Pa. Nov. 18, 2002) (319 out of 3,413 class members received $62 each); *Thomas v. NCO Financial Systems, Inc.*, No. Civ.A. 00-5118, 2002 WL

8

added benefit of this settlement is that unlike many FDCPA class action settlements, this is not a claim form class. A settlement check will be sent to every member who has been located and does not opt out.

### B. The Statutory Damages Cap

The maximum statutory damages for a class action under the FDCPA is the lesser of $500,000 or one percent of the debt collector's net worth. Under the only appellate case addressing the issue, the Seventh Circuit case of *Sanders v. Jackson*,[12] net worth under the FDCPA means "balance sheet or book value net worth," as opposed to "fair market" net worth.[13]

Congress modeled the class action damages provision of the FDCPA on the damages provision of the Truth in Lending Act.[14] Before TILA was amended in 1974 to cap statutory damages at the lesser of $500,000 or one percent of a defendant's net worth, courts were placed in "a dilemma which had them choose between denying class actions altogether or permitting multi-million dollar recoveries against defendants for minor or technical

---

1773035 (E.D. Pa. July 31, 2002) (Court preliminarily approved a settlement that, with a claim form return rate of 5%, provided each claimant with $1.09, representing 150% of the maximum class recovery); *Saunders v. Berks Credit & Collections, Inc.*, No. Civ. 00-3477, 2002 WL 1497374 (E.D. Pa. July 11, 2002) (159 out of over 3,000 class members claimed a portion of the settlement funds and received $62.54 each).

[12]    209 F.3d 998 (7th Cir. 2000).

[13]    *Id.* at 1003.

[14]    *Compare* 15 U.S.C. § 1692k of the FDCPA with 15 U.S.C. § 1640 of TILA.

violations...."[15] Thus, the goal of the TILA and FDCPA statutory damage caps is to teach defendants a lesson by providing for a meaningful class recovery while at the same time protecting the financial viability of defendants, which would make courts less reluctant to certify class actions involving such claims.[16] While one may question the wisdom of adopting such a low ceiling for debt collectors, which typically have a much lower net worth than financial institutions, Congress made a rational policy decision that is entitled to deference by the Courts.

### C. The complexity, expense and duration of the litigation

As appears from the Docket Sheet, this litigation promised to be hard fought. The settlement agreement expressly recited the "substantial expense, inconvenience, and distraction of burdensome and protracted litigation" as one of the considerations for settlement.

### D. The reaction of the class to the settlement

No objections to the settlement were received by the date the Court set for objections.

### E. The course of negotiations and opinion of counsel

Both plaintiff and defense counsel believe that the settlement is fair, reasonable, and adequate. Defendants have raised potentially meritorious defenses to the lawsuit, and it is possible that there would be no recovery if the case is not settled. This settlement is the result

---

[15] *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 10 (E.D.Mich. 1976).

[16] *See Id.*

of serious negotiations and was reached with the assistance of Parajudicial Officer Reed Murphy who was appointed by the court to assist the parties in resolving the controversy.

### F. The Class Representative's Award

The class representative is entitled to statutory damages separate from the class award, 15 U.S.C. § §1692k(a))2)(B)(i). Normally, the class representative is also given an incentive award, for the efforts she put into the case, including consulting with counsel, and attending the settlement conferences (which involved taking time off from work). The incentive award of $500 is modest, indeed. Rossman & Edelman, Consumer Class Actions § 11.8 n. 72 (5th Ed. 2002); National Ass'n of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions* §4C, 176 F.R.D. 375 (1998) ($2,000-3,000 is modest).

### G. Attorney's fees of $8,500

Under FDCPA caselaw, settling the attorney fee and cost section of an FDCPA class action for a total sum of $8,500 after contentious motion practice, settlement conferences, negotiation, and discovery is far below comparable fees awarded in similar settlements.[17] "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977). The results in this case are $14,000 in statutory damages for plaintiff and the class. Because

---

[17] *See, e.g., Bonnett*, 2003 WL 21658267 (granting final approval to an award of $69,000 in attorney fees); *Cope*, 203 F.Supp.2d 650 (granting final approval to an award of $25,000 in attorney fees); *Henderson*, 2002 WL 3145728 (granting final approval to an award of $20,000 in attorney fees and costs); *Oslan*, 232 F.Supp.2d 436 (granting preliminary approval to an award of $55,000 in attorney fees and costs); *Saunders*, 2002 WL 1497374 (granting final approval to an award of $62,876.74 in attorney fees and costs).

the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. Cowan v. Prudential Ins. Co., 935 F.2d 522, 527 (2d Cir. 1991).

The Second Circuit rejects the "proportionality" argument as the basis for a fee award. E.g., Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985); McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. 1983). Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. E.g., City of Riverside, 477 U.S. at 580 (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation); Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); United States Football League v. National Football League, 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension). Norton v. Wilshire Credit Corp., 36 F. Supp. 2d at 220 (rejecting proportionality in awarding $58,000 in fees in an FDCPA case).

In a Consumer Credit Protection Act case such as this one, the award is often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." Postow v. Oriental Bldg Ass'n, 455 F. Supp. 781, 791 (D.D.C. 1978). See also Bittner v. Tri-County Toyota, 569 N.E.2d 464, 466 (Ohio S.Ct. 1991) (the remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount cases cannot fully compensate the attorneys who take them on).

In Gradisher v. Check Enforcement Unit, 2003 U.S.Dist. LEXIS 753 (W.D. Mich. 2003), the court awarded attorney fees of $69,872.00 where the plaintiff recovered FDCPA

statutory damages of only $1,000.00. In Armstrong v. Rose Law Firm, P.A., 2002 WL 31050583 (D. Minn. Sep 05, 2002) the court awarded the full lodestar fee request of over $43,000 at $250 per hour when the consumer received the maximum FDCPA statutory damages of $1,000. In Perez v. Perkiss, 742 F. Supp. 883 (D. Del. 1990), an FDCPA case, the court awarded over $10,000 in fees on a $1200 jury verdict, including 11 hours defending the fee petition. "[N]o matter how high the settlement offers urged by the *plaintiff* may have been, those offers were still for significantly less money than the total sum the plaintiff, as the prevailing party, is now entitled to recover." Id. at 890. See also Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216 (D.N.J. 1999) (awarding over $57,000 in fees in an FDCPA case).

The reasonableness of the fee requested here is underscored by the fact that the Fee Application is an arm's-length negotiated term of the Settlement, agreed upon by the parties after the overall agreement to settle the Action. The lack of possible collusion is clear as Defendant had a "particular incentive to bargain hard to keep the fee low."[18] Under these circumstances, the Court should give great weight to the negotiated fee in considering the fee request.[19]

Therefore, when fees are negotiated: 1) after relief to the class was already determined, 2) the fee is separate from relief to the class and does not detract from the relief to the class, and 3) the relief to the class otherwise appears fair, the parties should be free to negotiate class

---

[18]  *Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 WL 1161145, *30, 1997 N.Y. Misc. LEXIS 652, at * 90 (Supreme Court, N.Y. County).

[19]  *Id.*

13

counsel's compensation as is done in the free market. There is a presumption that settlement negotiations between and among experienced counsel have been conducted in good faith.[20] Moreover, the Court can make the common sense presumption that Defendants do not want to pay more than is fair and will not willingly do so. Indeed, plaintiff's counsel compromised her fees severely in order to obtain the best possible settlement for the class.

The settlement agreement itself recites that "Tobin agrees not to oppose the application for those fees and hereby stipulates that they are reasonable." Therefore, it can be presumed that the negotiated fee is fair and reasonable.

### H. Fee Awards in Private Attorney General Statutes

Important public policy considerations also support approval of the requested fees. In considering attorneys' fees, courts are mindful that such awards serve the dual purpose of encouraging representatives acting as "private attorneys' general," to seek redress for damages to entire classes of persons and discouraging future misconduct of a similar nature.[21]

---

[20] *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980).

[21] *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit.") (citations omitted).

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval to the settlement class and the application of plaintiff for a $500 incentive award and of Counsel for $8,500 in fees and costs.

THE PLAINTIFF

BY   /s/ Joanne S. Faulkner
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on October 19, 2004, postage prepaid, to:

Jonathan D. Elliot
P. O. Box 763
Southport CT 06490

/s/ Joanne S. Faulkner
Joanne S. Faulkner

15